IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHRIDGE PARTNERS II, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION №: 4:22-cv-2243 |
| | § | |
| MARKETING WORLDWIDE | § | JURY REQUESTED |
| CORPORATION AND | § | |
| JASON SCHLENK, | § | |
| | § | |
| Defendants. | § | |

**SOUTHRIDGE PARTNERS II LP'S**
**ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT COURT:

Southridge Partners II LP ("***Southridge***"), pursuant to Federal Rule of Civil Procedure 22, files this Original Complaint against Marketing Worldwide Corporation ("***MWWC***") and Jason Schlenk ("***Schlenk***"), and alleges as follows:

1.    JURISDICTION AND VENUE:

2.    Jurisdiction is appropriate under both diversity and federal question.  This is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a different State.  Therefore, federal subject-matter

jurisdiction exists under 28 U.S.C. § 1332(a).  Additionally, the amount in controversy is the sum or value specified by 28 U.S.C. § 1332.

3.    To the extent necessary, supplemental jurisdiction exists as the claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b)) and Rule 10b-5.  Thus, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  MWWC is headquartered in this Judicial District and conducts business from this Judicial District.

5.    In connection with the acts alleged in this complaint, MWWC, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, interstate telephone communications and the facilities of the national securities markets.

6.    <u>PARTIES</u>:

7.    Southridge is a limited partnership organized in and under the laws of the State of Delaware, with its principal place of business in Ridgefield, Connecticut.

8.      MWWC is a Wyoming Corporation with its principal headquarters located at 16730 Creek Bend Drive, Sugar Land, Texas 77478.   MWWC has not designated a registered agent in Texas.   Sec. 5.251 of the Texas Business Organization Code provides "FAILURE TO DESIGNATE REGISTERED AGENT.  The secretary of state is an agent of an entity for purposes of service of process, notice, or demand on the entity if:  (1)  the entity is a filing entity or a foreign filing entity and: (A)   the entity fails to appoint or does not maintain a registered agent in this state…or (2)  the entity is a foreign filing entity and: …(B)   the entity transacts business in this state without being registered as required by Chapter 9.  Therefore, MWWC may be served by serving the Texas Secretary of State by Certified or Regular Mail at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or by hand delivery at Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas.   MWWC Wyoming registered agent is Michele Goodrich, 312B Murray Road, Cheyenne, WY 82007.

9.      Schlenk is an individual who may be served at his principal place of business, MWWC, 16730 Creek Bend Drive, Sugar Land, Texas 77478.

10.   <u>FACTS</u>:

11.   Southridge is a Delaware limited partnership which provides consulting services and  direct investment to small and middle market companies in the United States, whether in the form of loans or the purchase of common stock or preferred stock, as well as multitude of co-funding options.   Southridge invests money in the form of working capital for existing operations and also for business expansion, depending on the requirements of the company and opportunity for return on capital.

12.   Originally, MWWC designed and manufactured accessories and components for the commercial machinery industry.   MWWC was incorporated in Delaware in 2003  MWWC was traded on the OTC Markets under the ticker "MWWC."

13.   In 2011, MWWC contacted Southridge through a professional agent in order to assist MWWC in raising funds for continued operations and expansion. Southridge provided direct debt lending in the form of  promissory notes ("***<u>Promissory Notes</u>***").  The Promissory Notes may be converted into MWWC common stock at the option of the holder. The aggregate principal amount remaining on the outstanding Promissory Notes is $778,500.00 as is demonstrated in the chart below.

| *Promissory Note* | *Issuance Date* | *Principal Remaining* |
|---|---|---|
| Promissory Note | July 1, 2011 | $25,000 |
| Promissory Note | May 16, 2012 | $80,000 |
| Promissory Note | July 30, 2012 | $50,000 |
| Promissory Note | Sept. 12, 2012 | $10,000 |
| Promissory Note | Sept. 27, 2012 | $35,000 |
| Promissory Note | Oct. 1, 2012 | $25,000 |
| Promissory Note | Oct. 11, 2012 | $22,000 |
| Promissory Note | Oct. 26, 2012 | $25,000 |
| Promissory Note | Nov. 1, 2012 | $25,000 |
| Promissory Note | Nov. 9, 2012 | $35,000 |
| Promissory Note | Nov. 29, 2012 | $30,000 |
| Promissory Note | Dec. 1, 2012 | $25,000 |
| Promissory Note | Dec. 12, 2012 | $25,000 |
| Promissory Note | Jan. 1, 2013 | $25,000 |
| Promissory Note | Jan. 4, 2013 | $25,000 |
| Promissory Note | Jan. 18, 2013 | $25,000 |
| Promissory Note | Jan. 31, 2013 | $30,000 |
| Promissory Note | Feb. 1, 2013 | $25,000 |
| Promissory Note | Feb. 28, 2013 | $30,000 |
| Promissory Note | March 1, 2013 | $25,000 |
| Promissory Note | April 1, 2013 | $25,000 |
| Promissory Note | May 1, 2013 | $25,000 |
| Promissory Note | May 6, 2013 | $25,000 |
| Promissory Note | May 31, 2013 | $25,000 |
| Promissory Note | June 1, 2013 | $25,000 |
| Promissory Note | July 1, 2013 | $25,000 |
| Promissory Note | Aug. 1, 2013 | $25,000 |
| Promissory Note | Aug. 2, 2013 | $6,500 |
| TOTAL | | $778,500 |

14.    In addition to lending money to MWWC, in 2011 Southridge  invested in Series A and Series B Preferred Stock issued by MWWC.

15.  In May 2012, Southridge exchanged shares of MWWC Series A and Series B Preferred Stock in return for 11,923 shares of a new series of preferred stock, Series E Preferred Stock ("***Series E***").

16.  The acquisition document was entitled "*Marketing Worldwide Corporation Certificate of Designation of Series E 6% Convertible Preferred Stock*" dated May 22, 2012 (the "***Certificate of Designation***").

17.  The Series E had protection provisions which were expressly stated the Certificate of Designation which was filed as Exhibit 1 to a Form 8-K filed by MWWC on June 4, 2012 with the Securities and Exchange Commission. Protective provisions provided rights to Southridge as a preferred stockholder, to protect its preferred shares with respect to the MWWC.

18.  Here is an image of the protective provision:

* * * * * * *

(a)  Protective Provisions . So long as any shares of Preferred Stock are outstanding, the Company shall not and shall cause its subsidiaries not to, without the affirmative vote of each of the holders of the Preferred Stock then outstanding, (i) alter or change adversely the powers, preferences or rights given to the Preferred Stock, (ii) alter or amend this Certificate of Designation, (iii) authorize or create any class of stock ranking as to dividends or distribution of assets upon a Liquidation (as defined in Section 5) or otherwise senior to or pari passu with the Preferred Stock, (iv) amend its certificate of incorporation, bylaws or other charter documents so as to affect adversely any rights of any holders of the Preferred Stock, (v) increase the authorized or designated number of shares of Preferred Stock, (vi) issue any additional shares of Preferred Stock (including the reissuance of any shares of Preferred Stock converted for Common Stock) or (vii) enter into any agreement with respect to the foregoing.

* * * * * * *

19.     There are several terms relevant to the obligation of MWWC to honor the Series E conversion obligations.  Here is an image of provision on conversion at the option of Southridge:

\* \* \* \* \* \* \*

Section 6.  Conversion.

a) Conversions at Option of Holder. Each share of Preferred Stock shall be convertible, at any time and from time to time from and after the Original Issue Date at the option of the Holder thereof, into that number of shares of Common Stock (subject to the limitations set forth in Section 6(d)) determined by dividing the Stated Value of such share of Preferred Stock by the Conversion Price. Holders shall effect conversions by providing the Company with the form of conversion notice attached hereto as Annex A (a " Notice of Conversion "). Each Notice of Conversion shall specify the number of shares of Preferred Stock to be converted, the number of shares of Preferred Stock owned prior to the conversion at issue, the number of shares of Preferred Stock owned subsequent to the conversion at issue and the date on which such conversion is to be effected, which date may not be prior to the date the applicable Holder delivers by facsimile such Notice of Conversion to the Company (such date, the " Conversion Date "). If no Conversion Date is specified in a Notice of Conversion, the Conversion Date shall be the date that such Notice of Conversion to the Company is deemed delivered hereunder. The calculations and entries set forth in the Notice of Conversion shall control in the absence of manifest or mathematical error. To effect conversions of shares of Preferred Stock, a Holder shall not be required to surrender the certificate(s) representing the shares of Preferred Stock to the Company unless all of the shares of Preferred Stock represented thereby are so converted, in which case such Holder shall deliver the certificate representing such shares of Preferred Stock promptly following the Conversion Date at issue. Shares of Preferred Stock converted into Common Stock or redeemed in accordance with the terms hereof shall be canceled and shall not be reissued.

\* \* \* \* \* \* \*

20.     Here is an image of the section on the conversion price:

\* \* \* \* \* \* \*

b) Conversion Price. The conversion price for the Preferred Stock shall be equal to fifty percent (50%) (the "Discount") of the lowest closing bid price for the Company's common stock during the five (5) trading days immediately preceding a conversion date, as reported by Bloomberg ( the "Average Closing Bid Price") ; provided that if the closing bid price for the common stock on the Clearing Date (defined below) is lower than the Average Closing Bid Price, then the conversion price shall be adjusted such that the Discount shall be taken from the closing bid price on the Clearing Date, and the Company shall issue additional shares to Purchaser to reflect such adjusted conversion price. T he Clearing Date shall be on the date in which the conversion shares are deposited into the Purchaser's brokerage account and Purchaser's broker has confirmed with Purchaser the Purchaser may execute trades of the conversion shares.

\* \* \* \* \* \* \*

21.     Here is an image of the section on the delivery of stock upon conversion:

\* \* \* \* \* \* \*

c) Mechanics of Conversion .

i. Delivery of Certificate Upon Conversion . Not later than five (5) Trading Days after each Conversion Date (the " Share Delivery Date "), the Company shall deliver, or cause to be delivered, to the converting Holder (A) a certificate or certificates representing the number of Conversion Shares being acquired upon the conversion of the Preferred Stock (including, if the Company has given continuous notice pursuant to Section 3(b) for payment of dividends in shares of Common Stock at least twenty (20) Trading Days prior to the date on which the Notice of Conversion is delivered to the Company, shares of Common Stock representing the payment of accrued dividends otherwise determined pursuant to Section 3(a) but assuming that the Dividend Notice Period is the twenty (20) Trading Day period immediately prior to the date on which the Notice of Conversion is delivered to the Company and excluding for such issuance the condition that the Company deliver the Dividend Share Amount as to such dividend payment), and (B) a bank check in the amount of accrued and unpaid dividends (if the Company has elected or is required to pay accrued dividends in cash).

\* \* \* \* \* \* \*

22.     Here is an image of the provision relating to the absolute obligation to deliver

certificates.

\* \* \* \* \* \* \*

iii. Obligation Absolute; Partial Liquidated Damages . The Company's obligation to issue and deliver the Conversion Shares upon conversion of Preferred Stock in accordance with the terms hereof are absolute and unconditional, irrespective of any action or inaction by a Holder to enforce the same, any waiver or consent with respect to any provision hereof, the recovery of any judgment against any Person or any action to enforce the same, or any setoff, counterclaim, recoupment, limitation or termination, or any breach or alleged breach by such Holder or any other Person of any obligation to the Company or any violation or alleged violation of law by such Holder or any other person, and irrespective of any other circumstance which might otherwise limit such obligation of the Company to such Holder in connection with the issuance of such Conversion Shares; provided , however , that such delivery shall not operate as a waiver by the Company of any such action that the Company may have against such Holder. In the event a Holder shall elect to convert any or all of the Stated Value of its Preferred Stock, the Company may not refuse conversion based on any claim that such Holder or anyone associated or affiliated with such Holder has been engaged in any violation of law, agreement or for any other reason, unless an injunction from a court, on notice to Holder, restraining and/or enjoining conversion of all or part of the Preferred Stock of such Holder shall have been sought and obtained, and the Company posts a surety bond for the benefit of such Holder in the amount of 120% of the Stated Value of Preferred Stock which is subject to the injunction, which bond shall remain in effect until the completion of arbitration/litigation of the underlying dispute and the proceeds of which shall be payable to such Holder to the extent it obtains judgment. In the absence of such injunction, the Company shall issue Conversion Shares and, if applicable, cash, upon a properly noticed conversion.

\* \* \* \* \* \* \*

23.     Shortly after Southridge took delivery of the Series E, Southridge sold certain

of the Series E to various third parties, resulting in Southridge holding 5,219

Series E shares as of June 6, 2012. Thereafter, Southridge converted and/or sold Series E shares throughout 2012 and 2013, resulting in a net Series E shareholding of 1,705.75 shares.

24.   Between 2014 and 2021, MWWC went dormant and Southridge did not convert in any of its Series E shares.

25.   On July 23, 2021, Ted Ralston[1], as director, president and secretary of a new Wyoming company with the same name as the Delaware MWWC – that is, Marketing Worldwide Corporation – filed a "Notice of Entity Election" certificate in Wyoming to become a Wyoming corporation. Also filed on July 23, 2021 was the "Profit Corporation Articles of Incorporation", wherein Anthony F. Newton[2] was listed as the incorporator.

26.   On October 7, 2021, MWWC appointed Michele Goodrich, 312B Murray Road, Cheyenne, WY 82007 as its registered agent[3].

27.   On November 12, 2021, MWWC (the Delaware Corporation) merged into MWWC (the Wyoming Corporation), and the merger was filed in Wyoming on December 10, 2021 at the direction of Schlenk.

---

[1]   Ted Ralston's listed address was 16730 Creek Bend Drive, Sugar Land, Texas 77478.
[2]   Anthony F. Newton's listed address was 16730 Creek Bend Drive, Sugar Land, Texas 77478.
[3]   Michele Goodrich's mailing address of 1740H Dell Range Blvd, Suite 166, Cheyenne, Wyoming 82009 was also listed.

28.   MWWC addresses the corporate history in their March 31, 2022 Form 10-Q.
Here is an image of the section of the 10-Q on the corporate history (Section
1, Page 1):

\* \* \* \* \* \* \*

The state of incorporation or registration of the issuer and of each of its predecessors (if any) during the past five
years; Please also include the issuer's current standing in its state of incorporation (e.g. active, default, inactive):

The issuer's state of incorporation is Wyoming as of July 23, 2021.
The issuer was previously incorporated in Delaware from July 23. 2003 to July 22, 2021.
The issuer's standing in the State of Wyoming is active.

\* \* \* \* \* \* \*

29.   On information and belief, to be followed up in discovery in this case, the
Defendants engaged in a scheme of corporate hijacking, also known as
corporate identity theft, in order to acquire control of MWWC for use in
subsequent merger and acquisition transactions involving private companies
seeking to go public.

30.   In any event, the newly organized Wyoming MWWC and Schlenk breached
the protective provisions by moving MWWC's jurisdiction and by amending
MWWC's certificate of incorporation to adversely affect rights of Southridge
as preferred stockholders, as well as other MWWC shareholders.  Further, the
newly organized Wyoming MWWC cannot now rely on the defenses or
protections that may be available to MWWC pursuant to the laws of Delaware.

31.   In the Wyoming Merger Agreement, Series E is not specifically mentioned. However, there is a reference to preferred stock.  Here is an image of the conversion section of the Merger Agreement:

\* \* \* \* \* \* \*

8.   **CONVERSION OF SECURITIES.**  At the Effective Time, by virtue of the Merger and without any action on the part of Surviving Corporation, the Company or any holder of any securities thereof:

(a) <u>Conversion of Company Common Stock.</u> Each share of Company Common Stock and Company Preferred Stock issued and outstanding immediately prior to the Effective Time shall be converted into one validly issued, fully paid and nonassessable share of Surviving Corporation Common Stock and Surviving Corporation Preferred Stock.

\* \* \* \* \* \* \*

32.   As stated in its current financial disclosures, MWWC now operates as an acquisition incubator, purchasing companies and patents.  There current website is https://marketingworldwide.co/.

33.   In MWWC's March 31, 2022 Form 10-Q, it references a new issuance of Series E Preferred, but makes no reference to Southridge's Series E.  An image of the reference in the 10-Q is as follows:

\* \* \* \* \* \* \*

| 3/6/2022 | New issuance | 5,000,000 | Series E Preferred | $ 0.025 | N | Joseph Caruso | Acquisition | Restricted | None |
|---|---|---|---|---|---|---|---|---|---|

\* \* \* \* \* \* \*

34. Curiously, Southridge came into possession of a letter from a 'Bob Honigford Attorney at Law'[4], on one plain piece of paper, with no date[5], address or phone number.  Honigford wrote the letter as if at the direction of Schlenk and MWWC.  Honigford advised that the Series E issued to Southridge is not part of the merger agreement, with no reference to any facts, law or analysis.

35. On June 23, 2022, Southridge attempted to convert 900 of the remaining 1,705.75 shares of Series E it held, and sent the conversion notice to MWWC, its counsel, and its new transfer agent "Issuer Direct Corporation ("***Transfer Agent***") in compliance with the terms of the Series E Certificate of Designation.  The conversion notice was ignored by MWWC and the transfer agent.

36. CAUSE OF ACTION №. 1:  CONVERSION (AS TO MWWC AND SCHLENK):

37. Southridge has owned and possessed the Series E since its issuance in 2012; the Series E is personal property; MWWC was redomiciled in Wyoming, and MWWC and Schlenk wrongfully exercised dominion or control over the

---

[4]     Counsel for Southridge checked with the State Bar of Texas, Delaware and Wyoming, and no attorney Honigford exists on their rolls.  In the Ohio Bar, there is a Robert Honigford at Phone Number: 419-879-5297 with no address.

[5]     Based on an email forwarding the Honigford letter, the date appears to be between April 12 and 18, 2022.

property, and Southridge suffered injury.   More specifically, MWWC and Schlenk failed to honor the protective provisions and conversion rights set forth in the Series E Certificate of Designation outlined above.

38.   Shares of Stock can be converted. *Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 204 (Tex. App. – Houston [1st Dist.] 1975, no writ).   The corporation directors, offices and employees who participated in the conversion of the stock by instigating, aiding or abetting the conversion may be held jointly liable for the conversion. *Taiwan Shrimp Farm Village Association v. U.S.A. Shrimp Farm Dev., Inc*., 915 S.W. 2d 61, 73 (Tex. App. – Corpus Christi 1996, writ denied).

39.   Southridge requests recovery of all of its actual damages, consequential damages (including lost profits), special damages (including lost profits) and incidental damages, not including exemplary damages.

40.   Defendants conduct amounted to malice under Texas Civil Practice & Remedies Code § 41.001(7) because the Defendants had a specific intent to cause substantial injury to the Southridge and/or Defendants had a conscious disregard of an extreme degree of risk to Southridge.

41.   Southridge requests recovery of exemplary damages in an amount as determined by the fact finder, but not less than three (3) times actual damages.

42.  CAUSE OF ACTION №. 2:   VIOLATION OF TEXAS UNIFORM COMMERCIAL CODE CHAPTER 8 – INVESTMENT SECURITIES 5 (AS TO MWWC AND SCHLENK):

43.  Under Section 8-401(a) of the UCC, issuers owe a duty to register a requested securities transfer on the issuer's books once certain statutory conditions are met.  UCC Section 8-401(a) provides: (a) if a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if: (i) under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name; (ii) the endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person; (iii) reasonable assurance is given that the endorsement or instruction is genuine and authorized (Section 8-402); (iv) any applicable law relating to the collection of taxes has been complied with; (v) the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8-204; (vi) a demand that the issuer not register transfer has not become effective under Section 8-403, or the issuer has complied with Section 8-403(b) but no legal process [e.g., an

injunction] or indemnity bond is obtained as provided in Section 8-403(d) [as described in greater detail below, no third party has disputed the transfer and no indemnity bond or injunction has been obtained]; and (vii) the transfer is in fact rightful or is to a protected purchaser.

44.     Under UCC Sections 8-401(a) and 8-403, an issuer may not "unreasonably" delay or refuse a requested transfer registration if:   (a) the shareholder's request meets the specified formalities (such as endorsement by an appropriate person); (b) a third-party has neither obtained an injunction to prevent the transfer nor posted an indemnity bond that protects the issuer against liability for refusing the transfer; and (c) the transfer is "rightful."  Further, if an issuer is under a duty to register a transfer and fails or refuses to do so, or unreasonably delays in registering the transfer, then the issuer is liable, under Section 8-401(b) of the UCC, for a stockholder's resulting damages. See also the description of 8-407 of the UCC below, which states that a transfer agent (here American Stock) has the same liability as an issuer under the UCC.

45.     Moreover, the option under UCC Section 8-403 to obtain an injunction or post an indemnity bond to stop a requested share transfer belongs to third-parties, not issuers. We also note that the Guidelines of The Securities Transfer Association (Updated July 2016), states "An issuer's stop transfer demand can

be problematic because the issuer often will not be an appropriate person under Section 8-403 of the UCC and because the processor [i.e., the Transfer Agent] has a duty to remain neutral in any dispute between an issuer and a shareholder.  Where the issuer makes a stop transfer demand, it may be appropriate, when a transfer request is made, to proceed by giving notice as under Section 8-403(b) of the UCC, thereby affording the issuer an opportunity to obtain an injunction or indemnity bond.  When the demand is made in advance of a transfer request, consideration should be given to warning the issuer that an injunction may be needed to enforce the demand." (emphasis added).  As such, the Transfer Agent has a duty to stay neutral in the dispute and to notify MWWC that an injunction is required.

46.    Finally, under 8-407 of the UCC, "a person acting as . . . transfer agent, registrar, or other agent for an issuer in the registration of a transfer of its securities, in the issue of new security certificates or uncertificated securities . . . has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions."

47.    As to the violation of the UCC provision by MWWC and Schlenk, this suit is seeking collect the indebtedness in the amount of approximately $360,000

pursuant to the failure by MWWC to honor the conversion by Southridge of a portion of the Series E into MWWC common stock in June 2022, as Southridge's actual damages, consequential damages (including lost profits), special damages (including lost profits) and incidental damages, not including exemplary damages.

48.   <u>CAUSE OF ACTION №. 3:  BREACH OF CONTRACT AS TO THE ORGANIZATIONAL DOCUMENT (AS TO MWWC AND SCHLENK)</u>:

49.   Southridge purchased Series E and received protective provision relative to the Series E shares.  MWWC was redomiciled.  In breach of the protective provisions, MWWC and Schlenk simply ignored and/or discarded the Southridge Series E shares.

50.   As to the violation and breach of the protective provisions, Southridge is seeking its actual damages, plus any consequential damages and incidental damages, if any.

51.   <u>CAUSE OF ACTION №. 4:  BREACH OF CONTRACT AS TO THE PROMISSORY NOTES (AS TO MWWC)</u>:

52.   MWWC issued to Southridge  the Promissory Notes for money lent as well as services provided.  MWWC breached the Promissory Notes contracts by not paying Southridge upon demand or request for conversion.

53.   As to the Promissory Notes, this suit is seeking to collect the indebtedness in the amount of $778,500.00, plus all legal interest, which is currently owed by MWWC to Southridge, plus Southridge requests recovery of all its actual damages, consequential damages and incidental damages, if any.

54.   <u>CAUSE OF ACTION №. 5:  VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 (AS TO MWWC AND SCHLENK)</u>:

55.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.   This Claim is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.  Section 78j(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
> (a)….
> (b)   To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement [1] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors….

57.   Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Southridge.  Such scheme was intended to, and did, deceive Southridge.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.   By virtue of his position at MWWC, Schlenk had actual knowledge of the materially false and misleading statements and intended to deceive Southridge, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior manager and director of MWWC, Schlenk had knowledge of the details of MWWC's internal affairs.

60.   Because of his positions of control and authority, Schlenk was able to and did, directly or indirectly, control the content of the statements of MWWC.

61.   Southridge requests recovery of all of its actual damages, consequential damages (including lost profits), special damages (including lost profits) and incidental damages, not including exemplary damages.

62.   <u>ATTORNEY'S FEES</u>:

63.   MWWC and Schlenk's defaults have made it necessary for Southridge to employ the undersigned attorney.  This claim was timely presented to MWWC and remains unpaid.  Southridge has been required to engage the undersigned attorney because of the above-described conduct and Southridge has agreed to pay the attorney a reasonable fee for his services.  Based upon one or more of the foregoing causes of action and/or Texas common law and/or the Agreement between the parties and/or pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, Southridge requests recovery of its reasonable and necessary attorney's fees in this case from MWWC and Schlenk.

64.   <u>RESERVATION OF RIGHT TO AMEND</u>:

65.   Pursuant to the Texas Rules of Civil Procedure, Southridge reserves the right to amend or supplement its pleadings.

66. <u>REQUESTS FOR RELIEF</u>:

67. Southridge respectfully requests that:

 a. Southridge be granted judgment against MWWC and Schlenk for all Southridge damages of approximately $1,300,000.00 plus Southridge requests recovery of all its consequential damages (including lost profits) and incidental damages (including lost profits), if any;

 b. Southridge be granted judgment for prejudgment interest, if any, at the maximum amount permitted at law, whichever is both higher and legal, if any, against MWWC and Schlenk;

 c. Southridge be granted judgment for its reasonable and necessary attorney's fees for the prosecution its counterclaim against MWWC and Schlenk;

 d. Southridge requests recovery of exemplary damages in an amount as determined by the fact finder, but not less than three (3) times actual damages.

 e. Southridge be granted judgment for all costs of Court against MWWC and Schlenk;

f.    Southridge be granted judgment for post-judgment interest, if any, at the maximum amount permitted at law, whichever is both higher and legal, if any, from the date of judgment until paid against MWWC and Schlenk; and

g.    Southridge be granted such other and further relief, special or general, legal or equitable, as Southridge may be shown to be justly entitled to receive.

68.    Respectfully submitted this 7th day of July 2022.

THE LOEV LAW FIRM, PC

By: _____
Timothy J. Henderson, Of Counsel
State Bar №. 09432500
Southern District of Texas №. 955
6300 West Loop South, Suite 280
Bellaire, Texas  77401-2905
713.667.7878
713.668.5697 (fax)
timjhenderson@msn.com

COUNSEL FOR PLAINTIFF
SOUTHRIDGE PARTNERS II, LP.

JURY REQUESTED